WILBORN GERMAN and others *v.* C. W. CLARK, Administrator of JOHN WITHERSPOON and others.

The entry on land that a Court can enjoin, is only an entry under force or color of legal process. It will not enjoin a mere trespass, unless irreparable damage is threatened.

An administrator does not always represent the creditors of his intestate; though, as a general rule, in controversies respecting the personal property, or what from circumstances may be considered personal property, the administrator represents the creditors and next of kin. And if, in an action concerning such property, the administrator fails to set up an estoppel against certain parties claiming it, the creditors are concluded by his action.

An estoppel must be certain at least to a common intent. The subject matter, and the estate to which it is sought to be applied, must be ascertained with reasonable certainty.

(*Dula* v. *Young* and *Clark,* 70 N. C. Rep. 450; *Hardee* v. *Williams,* 65 N. C. Rep 56; *Moore* v. *Shields,* 68 N. C. Rep. 327, cited and approved.)

CIVIL ACTION, by the creditors of the intestate of the defendant, Clark, for a settlement and distribution of the estate,

27                     |

and in the meantime for an injunction against two of the defendants, restraining them from entering upon certain land, tried before *Mitchell, J.*, at the Spring Term, 1874, of CALDWELL Superior Court.

On the trial below, his Honor granting the injunction restraining the defendants, William P. Witherspoon and Sarah A. Dula, from taking possession of a certain tract of land pending the present litigation, and also granting an order appointing a receiver, &c., the defendants appealed.

The opinion of Justice RODMAN contains a full statement of all the facts necessary to an understanding of the decision of this Court.

*Folk & Armfield*, for appellants.
*Smith & Strong* and *W. P. Caldwell*, contra.

RODMAN, J. The record in this case is voluminous, but the material parts of it may be stated in brief, thus:

The summons was issued 20th of May, 1869, and served on all the defendants. At Fall Term, 1869, of Caldwell Superior Court, the plaintiffs, on behalf of themselves and all other creditors of John Witherspoon, filed their complaint, setting forth that John Witherspoon died in 1864; defendant Clark became his administrator in 1866; the other defendants, W. P. Witherspoon and Sarah Dula, are his heirs; the deceased died greatly indebted; his personal estate is insolvent; he died seized of sundry pieces of land; that at Fall Term, 1866, of Caldwell Superior Court, the administrator had filed a petition against the heirs for leave to sell certain lands therein specified, which had been granted, but that he had delayed to sell; it prayed that he might be enjoined from preferring among creditors, that an account might be taken, and that he be compelled to sell the lands specified in his petition. Elk Farm is not specifically mentioned in the complaint, nor does it appear to be specifically mentioned in the petition. The defendants,

W. P. Witherspoon and Dula, did not answer; and judgment was given against them for want of an answer.

Clark, the administrator, answered, submitting to an account. He said that Elk Farm had not been sold by reason of a suit in Wilkes county respecting it, and that the sale of it had been suspended by order of the Court.

The Judge decreed an account, which was accordingly taken, but which it is not material further to refer to.

At Spring Term, 1874, of Caldwell Superior Court, the plaintiffs filed an affidavit reciting substantially the above facts, and they say that the heirs, W. P. Witherspoon and Dula, had brought an action in the Superior Court of Wilkes to recover possession of the Elk Farm, to which they alleged an equitable title, and that the Supreme Court, at January Term, 1874, had granted them that relief, (the case is reported in 70 N. C. Rep. 450, *Dula* v. *Young and Clark;*) that they threatened to take possession of the land ; that it had been sold to Young by order of the Superior Court of Caldwell, as appears in the report of the case, who had made valuable improvements ; that W. P. Witherspoon is insolvent and Sarah Dula a bankrupt, and that these two heirs, and the sons of Sarah Dula are largely indebted to the estate of John Witherspoon for money paid as surety for them.

And they move :

1. That a Commissioner be appointed to sell Elk Farm for the purpose of paying the debts of John Witherspoon.

2. For an injunction against W. P. Witherspoon and Sarah Dula from taking possession of Elk Farm.

4. For a receiver of the rents and profits *pendente lite.*

His Honor, the Judge below, adjudged accordingly, and the defendants Witherspoon and Dula appealed to this Court.

The plaintiffs in this Court rest their motion on a single proposition, viz : that the heirs are estopped from asserting title to the Elk Farm by the judgment for want of answers taken against them in this action as aforesaid.

Upon this proposition several observations occur :

1. No final judgment was given in this Court in the case of *Dula* v. *Young*. The Court expressed an opinion on the question presented and remanded the case. It does not appear that any judgment for Dula has been given below. If not, there is no ground for an injunction to prevent their entering on the land. Such entry as a Court can enjoin is only an entry under force or color of legal process. It will not enjoin a mere trespass unless irreparable damage is threatened. There are remedies for a mere trespass, both preventive and punitory, as effectual and more appropriate than through the equitable powers of a Court.

2. If, however, the case of *Dula* v. *Young* has been closed by a final judgment, or if from any cause the plaintiffs in this case cannot now avail themselves in that case of the alleged estoppel, the result is that they have waived and lost it by not pleading it in due time. That action was directly to assert an equitable title to the land. If the plaintiffs were estopped to assert it, the supposed purchaser and the administrator might have set up the estoppel. It is said, however, that the creditors, not having been parties to that action by name, had no opportunity to plead the estoppel, and they are not affected by the laches of the administrator. No one contends that an administrator always represents the creditors of the intestate. Often their interests are antagonistic. But it cannot be denied, as a general rule, that in controversies respecting the personal property of the deceased, or what, from the circumstances of the controversy, must be considered personal property *pro hac vice*, as in that case the administrator represents the creditors and the next of kin. This must necessarily be so in the sense in which it is here asserted. A man cannot generally be said to represent his own creditors in his life time. Yet if a hostile claimant obtains a *bona fide* judgment against him for a piece of property, the judgment binds the title and his creditors cannot impeach it. In the same sense, an administrator represents the creditors of his intestate. It is his duty to possess himself of the whole estate for them, and there is a presump-

tion that he discharges it. If there be an antagonism of interests, or fraud, or collusion with the claimant, these circumstances would take a case out of the general rule. Here nothing of that sort is suggested. The creditors might have made themselves parties if they had desired. *Hardee* v. *Williams*, 65 N. C. Rep. 56 ; *Moore* v. *Shields*, 68 N. C. Rep. 327. If these difficulties were out of the plaintiffs' way, the question would be reached, can the judgment desired to be set up as an estoppel, be considered one ?

It being by default is immaterial. Taking it in connection with the complaint, does it adjudge that the Elk Farm descended to W. P. Witherspoon and Sarah Dula as the heirs of John Witherspoon. On referring to the complaint it will be seen that Elk Farm is not specifically or certainly mentioned in it. It says that in 1866 the administrator filed a petition praying for leave to sell "certain tracts of land specified in his said petition, which said specification embraced all the lands of which his said intestate was seized and possessed at the time of his death, excepting the "Kirby land," and some smaller tracts. The petition is not referred to as a part of the complaint and is not set out on the record, and that being so, is immaterial for the present, whether in fact it particularly described Elk Farm or not. Indeed, the object of the action was not to obtain a judgment that certain lands had descended and should be sold. It was assumed that, that had been obtained in the action by the administrator against the heirs, in which it was the direct purpose. The object was to obtain a judgment restraining the administrator from preferences among the creditors, directing an account, and hastening the sales which he had been authorized but delayed to make.

An estoppel must be certain at least to a common intent. The subject matter and the estate to which it is sought to be applied, must be ascertained with reasonable certainty. It cannot be said from the record in this case, except upon conjecture, that Elk Farm was any part of the subject matter of the judgment

by default. It is true that the defendant Clark, in his answer, implies that Elk Farm had been ordered to be sold under the petition filed in 1866 ; but that cannot affect his co-defendants. The judgment by default is based on the complaint alone, and not on his answer. He further says that the sale was suspended by order of the Court.

If therefore the present plaintiffs had duly pleaded in the action of *Dula* v. *Young*, the judgment which they now rely on, the plea would have been bad for uncertainty.

4. If in the action by, the administrator against the heirs in 1866, there had been a judgment that the intestate died seized of Elk Farm, which descended to the defendants as his heirs, and an order of sale, that would have created an estoppel. *Hardee* v. *Williams*, 65 N. C., 56.

As the record in that action is not before us for any purpose, we cannot say how that was. But if such had been the case, it is scarcely to be supposed that the defendants in *Dula* v. *Young*, would have overlooked so clear a defence. If they did, it was waived and lost, for defences must be made in due time, or there would never be an end to litigation.

5. As to the allegation that W. P. Witherspoon and Sarah Dula, *and her three sons*, are largely indebted to the intestate, it is not a precise allegation that W. P. Witherspoon and Sarah Dula are so indebted; the debt may be entirely that of her sons, who have no interest in the land in question. But taking it to that effect, it cannot be contended that an administrator can seize the lands of an heir for a debt alleged to be owing to the ancestor, except in the usual way by judgment and execution.

6. As to the allegation that Young has put valuable improvements on the land since his purchase. It will suffice to say that he is no party to this action. If he is entitled to any remedy, it would seem that it ought to be sought in the case of *Dula* v. *Young*. The case in that action says that he bought under an order of sale which was made " without pre-

judice" to the rights of the heirs. Certainly a singular order for a Court to make; the sale was only of a law suit. We express no opinion as to his rights, except that they cannot be considered in this action.

These observations lead us to the conclusion that the order of his Honor, the Judge below appointing a commissioner to sell Elk Farm was erroneous.

1. As no demand for the sale of that certain piece of land was made in the original complaint, the order embraced a subject which was not in the litigation. If the affidavit and motion at Spring Term, 1874, are to be regarded as an amended and supplemental complaint, amended by the insertion of Elk Farm as a piece of land which descended, &c., and supplemental by the statement of new matter, viz: the supposed judgment of this Court respecting the title; then the defendants, W. P. Witherspoon and Dula should have had an opportunity of answering the new matter.

2. The affidavit informed his Honor either that there was an action then pending in Wilkes Court, (*Dula* v. *Young,*) in which the title of that land was directly in issue, or that it had been adjudged in that action, that John Witherspoon was a mere trustee of the land for his wife and her heirs. Upon the latter supposition, his order is in direct violation of a judgment of Wilkes Court, made upon the very issue upon which he now undertakes to decide, and between substantially the very parties to the case before him, and brought particularly to his attention by the plaintiffs.

For the same reasons we think his Honor was in error in allowing the second and third motions.

PER CURIAM. Judgment reversed and case remanded.