WILLIAM F. PERRY v. E. G. JACKSON.

*Trial—Issues—Evidence—Fraud—Examination of Witness— Ejectment—Rental Value.*

1. Submission to the jury of a needless issue, and proof of an admitted fact, which are not seen to be prejudicial to the party excepting, are not assignable for error.

2. The answer to an alleged improper question, not the question itself, constitutes ground of exception.

3. Where fraud in the execution of a deed is alleged, and the insolvency of the grantor inquired into, it was held competent on cross-examination to ask the witness if such insolvency was not well known in the grantor's neighborhood—as tending to discredit the witness.

4. The manner of conducting the examination of witnesses on a trial is left to the discretion of the presiding judge, whose duty it is to see that no prejudice arises from the tone in which questions are asked, as tending to impeach their credit.

5. Evidence of the annual rental value of land for a period preceding the time to which the plaintiff's title extended, is competent to show an average value common to each year.

6. Proof that the value placed upon two tracts of land, in dispute in this case, was disproportionate to their actual value, is admissible upon the question of fraud.

(*Worthy* v. *Caddell*, 76 N. C., 82; *Bost* v. *Bost*, 87 N. C., 477, cited and approved).

EJECTMENT tried at Fall Term, 1882, of WAKE Superior Court, before *McKoy, J.*

The defendant appealed.

*Messrs. Fowle & Snow,* for plaintiff.
*Messrs Argo & Wilder* and *Battle & Mordecai,* for defendant.

SMITH, C. J. The lands claimed and sought to be recovered in this action formerly belonged to one Willis H. Ray, who, and his wife, on September 15th, 1869, for the recited consideration of $120, conveyed one of the tracts containing 109 acres to his

son, Tyrrel Ray, and the latter on May 8th, 1872, for the con-sideration of $260 conveyed the same to the defendant.

The other tract containing 123 acres, the said Willis H. Ray, on the same day (September 15th, 1869), his wife uniting with him, conveyed for the alleged sum of $250 to his son-in-law, Horace R. Chappel, and Chappel and wife on January 5th, 1878, for the sum of $1,000, conveyed the same to the defendant.

The plaintiff derives his title to the land by virtue of sundry executions issued on judgments recovered by creditors of Willis H. Ray, in April, 1869, and in October, 1870, and, as he alleges, duly docketed in the superior court before the execution of the deeds in September, 1869; the sale under them by the sheriff, and his deed therefor to the plaintiff.

The answer of the defendant admits the fraudulent character of the deeds from Willis H. Ray, the debtor, but alleges that the deeds to himself were *bona fide* made upon and for good and full consideration, and without his having notice of the fraud infecting the prior conveyances.

The parties failing to agree upon the form of the issues, the court prepared and submitted to the jury the following:

1. Is the plaintiff the owner and entitled to the possession of the lands described in the complaint?

2. How much damage is plaintiff entitled to recover for the wrongful detention of the lands?

3. Did the defendant pay a full and fair price for the lands when he purchased them from Horace R. Chappel and Tyrrel Ray?

4. Did the defendant, at the time of his purchases of the several tracts, have notice of the fraud between Willis H. Ray and his vendees, Tyrrel Ray and Horace Chappel?

The defendant objected to the first two issues; the first, as unnecessary and involving only a question of law; the second, as not warranted by the allegations in the pleadings.

The court overruled the exception to the first issue as not well founded, and, to remove the ground of objection to the second,

permitted an amendment to the complaint claiming damages for the wrongful detaining, and thus introducing this element in the controversy.

We see no sufficient reason to sustain the objection to the first, which at most is needless. The finding of the 3d and 4th issues, favorably to the plaintiff, does not alone entitle the plaintiff to a recovery, but simply avoids the defendant's title as against the creditors of the fraudulent grantor, enforcing their debts by process of law, and persons purchasing under such process. It was not, therefore, inappropriate to add an issue as to the plaintiff's title and right of possession, to the solution of which the jury responses to the others may materially contribute. If, however, the submission of the issue were superfluous, we cannot see how the defendant can be prejudiced by the unnecessary proof of an admitted fact, so as to constitute a reviewable error to be corrected on the appeal.

Upon the trial before the jury, the defendant, examined on his own behalf, testified that he resided within four miles of Willis H. Ray, and at the times when the two deeds were executed to himself, he knew nothing of said Ray's insolvency, nor of his pecuniary condition, nor about his transactions with either his son or son-in-law, nor of the judgments against him, nor of any difficulty about the title, until just before the present suit was brought, and then for the first time heard of it. On his cross-examination, after the witness had stated that he lived within one hundred yards of part of the land in dispute in the year 1869, when the homestead was set apart to said Willis H. Ray under one of the executions, he was asked these questions:

1. Was not Willis Ray's insolvency well known in the neighborhood?

2. Was there a man or woman living in the neighborhood who did not know of his insolvency when the homestead was laid off?

Both interrogations were opposed by the defendant, admitted by the court, and exceptions entered thereto. The response of

the witness to the first was that he did not know; and to the second, that he could not answer the question.

The questions were entirely competent, as tending to discredit the previous testimony of the witness that he knew nothing of the insolvency of Ray—the known or reputed insolvency being a circumstance bearing upon the fraudulent character of the deed of the insolvent debtor, and tending to fix the defendant with notice or knowledge of the fact, or at least to put him on inquiries, which, if pursued, might result in his acquiring such knowledge, which is of equivalent force and effect.

But a sufficient answer to the objection is that the inquiry elicited no information, and it is not the question but the response to it, when improper and incompetent as evidence, upon which error can be assigned. *Bost* v. *Bost*, 87 N. C., 477.

The defendant's counsel complain of the language employed in the second interrogatory, and the supposed tone and manner in which it was addressed to the witness, as involving an impeachment of his integrity and truthfulness, and also leading. These are matters (and we cannot go out of the record to assume what is suggested, but does not appear in it) which rest in, and must be left to the discretion of the judge who conducts the trial, and which, unless grossly abused if even in such case, is not subject to the revision and correction of an appellate court, as an error in law.

Again, the defendant complains that a witness for the plaintiff was asked and upon objection allowed to testify to the rental value of the lands during the ten years preceding the trial, while the plaintiff's title extended back only four years, and to estimate during that interval the value of the use and occupation of the one tract at $40 and the other at $80. It was in the defendant's power to inquire as to the value during the period covered by the plaintiff's claim, if it were not uniform during the ten years, and thus prevent an injustice to himself. As he has not, it must be assumed that this average was common to each year, and if so, he is properly chargeable upon the evidence as if con-

fined to the four years immediately preceding, and the verdict awards damages only for this interval. The proof as to the other six years is only superfluous.

The witness was further interrogated as to the actual value of the different tracts, at the time when the respective deeds were made to Tyrrel Ray and Chappel, and to this the defendant objected, as, offered to prove the conceded fraud in the execution of those conveyances, needless and calculated unfavorably to influence the jury in rendering their verdict. This exception is not well founded. The defendant derives his title through the fraudulent deeds, and is presumed to know their contents and the sum stated as the purchase money of each. If these are greatly disproportionate to their actual value, the information would suggest the want of entire good faith in the transaction, and an intent to screen the property from creditors, and this would be greatly strengthened by the close relationship among the parties. The answer shows such disparity, the one tract being valued at $300 and the other at $500, and this was proper for the consideration of the jury.

We can understand how unnecessary evidence, such as that introduced, and its introduction held to be error in *Worthy* v. *Caddell,* 76 N. C., 82, may tend to mislead and prejudice the jury, but it is not easy to see how mere proof of an admitted fact can have this effect generally, or can constitute error in law. But the evidence here admitted is obnoxious to no such criticism, and was both pertinent and material upon the contested issue of notice of the fraud.

We have not considered the question whether the judgments were docketed, before the deeds of Willis H. Ray were executed, upon the proper book, so as to create a lien under the provisions of the Code, since the verdict of the jury dispenses with the inquiry.

The remaining exception is as to the judgment for damages upon the verdict.

The jury award the sum of $100 as a fair rental for each

year since the plaintiff acquired his title under the sheriff's deed, to-wit, from July 8th, 1878, with interest on each annual sum, deducting therefrom the sum of $675 paid by defendant for the land.   This verdict would extinguish the damages if thus applied, but so much of it as directs the reduction must be regarded as surplusage and not in response to the issue, and moreover, the money paid in purchasing the land cannot legally be applied in payment of rent.   But as the plaintiff remits all in excess of $91.66 due as of July 8th, 1882, he is entitled to recover that sum.

There is no error and the judgment must be affirmed, and it is so ordered.

No error.          .                                    Affirmed.